ROBERT B. AUGUST *v.* ROBERT R.
MORAN, JR., ET AL.
(AC 17152)

Foti, Spear and Dupont, Js.

Argued May 4—officially released September 1, 1998

*Henry C. Ide,* for the appellant (plaintiff).

*Walter R. Hampton, Jr.,* for the appellees (defendants).

*Opinion*

SPEAR, J. The plaintiff, Robert B. August, appeals from the summary judgment rendered by the trial court in favor of the defendants, Robert R. Moran, Jr., Philip J. Carignan and Glenn E. Knierim, Jr., in August's action for an accounting of his partnership interest in the former law firm of August and Moran. August claims that the trial court improperly concluded that his interest in August and Moran was fully determined in prior litigation and, therefore, he was barred in this action by the doctrine of collateral estoppel from relitigating it.[1] We agree and reverse the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. Until May, 1988, August had been a partner with the defendants in a general partnership engaged in the practice of law in the firm of August and Moran. In May, 1988, August and Moran merged with another law partnership, Lazorick and Shuster, and became known as August, Moran, Lazorick and

---

[1] August also claims that the trial court's fact-finding was clearly erroneous. In disposing of the summary judgment motion, the trial court properly did not find any facts. In discussing the legal claim of collateral estoppel, the trial court referred to facts that were found in the prior proceeding.

Shuster. All the assets and liabilities of August and Moran were transferred to the new partnership to establish a capital account for each partner in the new firm. August withdrew from the partnership of August, Moran, Lazorick and Shuster in March, 1991. In March, 1993, the successor law firm, Moran, Shuster, Carignan and Knierim, commenced an action against August to recoup from him the balance of his negative capital account. The trial court rendered judgment against August and ordered him to repay the negative balance of his capital account to the firm.[2]

Approximately three weeks after that judgment was rendered, August commenced the present action for an accounting of his partnership interest in August and Moran as of May 31, 1988. Specifically, August requested not only a formal accounting of his partnership interest in August and Moran prior to the merger in 1988, but also a determination of his partnership property rights in August and Moran for that same time period, pursuant to General Statutes §§ 34-60 (d)[3] and 34-62.[4] In the defendants' fifth special defense,[5] they claim that August's request for an accounting is barred by the doctrine of collateral estoppel because the issue of an accounting of August's interest in August and Moran was fully litigated

---

[2] The court determined that August, at the time of his withdrawal from the firm, had a negative capital account in the amount of $46,699.07, and rendered judgment in favor of Moran, Shuster, Carignan and Knierim in the amount of $44,299.07, the amount of August's negative capital account less $2400 in compensation that he was entitled to from the firm. This decision was later affirmed by our Supreme Court in *Moran, Shuster, Carignan & Knierim* v. *August*, 232 Conn. 756, 657 A.2d 229 (1995).

[3] General Statutes § 34-60 provides in relevant part: "Any partner shall have the right to a formal account as to partnership affairs . . . (d) whenever . . . circumstances render it just and reasonable."

[4] General Statutes § 34-62 provides: "The property rights of a partner are (1) his rights in specific partnership property, (2) his interest in the partnership, and (3) his right to participate in the management."

[5] The defendants' fifth special defense states: "Plaintiff is collaterally estopped from pursuing an action for an accounting."

and necessarily determined in the prior litigation between the parties. The court granted the defendants' motion for summary judgment on their fifth special defense, concluding that August was collaterally estopped from pursuing his action for an accounting of his interest in August and Moran. This appeal followed.

Because the defendants' motion for summary judgment was based solely on the special defense of collateral estoppel, we address the propriety of the trial court's grant of summary judgment on that ground only. "The standards governing . . . review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 744–45, 660 A.2d 810 (1995). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Id., 745. The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law; *D.H.R. Construction Co.* v. *Donnelly*, 180 Conn. 430, 434, 429 A.2d 908 (1980); and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book § 381 [now § 17-46]. . . . *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 105, 639 A.2d 507 (1994)." (Internal quotation marks omitted.) *Ascuitto* v. *Farricielli*, 244 Conn. 692, 696, 711 A.2d 708 (1998).

Before we address the trial court's conclusion that August's partnership interest in August and Moran was determined in the prior litigation, we will discuss the

gravamen of August's appeal, namely, the distinction between the calculation of a partner's capital account and the accounting of a partner's partnership interest. First, a partner's "capital account" in a partnership is defined as an account that represents "his contribution or investment in the partnership." Black's Law Dictionary (6th Ed. 1990). A partnership interest, however, includes "all of a partner's interests in the partnership, including the partner's transferable interest and all management and other rights"; General Statutes § 34-301 (8); as well as his "share of the profits and losses . . . and the right to receive ·distributions of partnership assets"; General Statutes § 34-9 (11); which necessarily involves consideration of all assets, including cash and accounts receivable. Last, while "circumstances may require that a partnership accounting be limited in its scope, ordinarily the accounting should embrace a complete adjustment of *all firm accounts and partnership affairs* . . . ." (Emphasis added.) 68 C.J.S. 970, Partnership § 432 (b) (1950).

Here, August maintains that the trial court improperly considered the calculation of August's capital account with August and Moran to have also determined the issue of an accounting of his partnership interest with the firm. He asserts that the value of a capital account and the value of a partnership interest are not the same, and that the issue of an accounting of a partnership interest is not necessarily subsumed within the calculation of a partner's capital account. We agree.

The trial court stated in its decision granting summary judgment for the defendants that "Ronald Bucchi, a certified public accountant, testifying on behalf of August in the prior action, stated that he had, essentially, performed an accounting of the interest of August in August and Moran as of May, 1988," and that while "[i]t is true that the prior action was not an action for an accounting . . . it was an action in which the value

of August's capital account in August and Moran was fully litigated. It is inconceivable how the present action for an accounting from a firm that has not existed for almost ten years can have any purpose other than to reestablish the value of August's capital account in August and Moran. August fully litigated that issue in the prior action. He is barred from relitigating it by the doctrine of collateral estoppel."

We understand the trial court's concern about this belated accounting action that was brought only after an adverse decision was rendered as to August's negative capital account. We do not, however, agree with the trial court's reasoning that because the issue of August's capital account was fully litigated, the issue of an accounting of his interest in the partnership was also determined.

Specifically, "[c]ollateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been *actually decided* and the decision must have been necessary to the judgment. . . . The doctrine of collateral estoppel is based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate.' . . . *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 296, 596 A.2d 414 (1991)." (Emphasis added; internal quotation marks omitted.) *Warner* v. *Lancia*, 46 Conn. App. 150, 160–61, 698 A.2d 938 (1997).

The trial court determined that the calculation of the value of the plaintiff's capital account is sufficient to demonstrate that the issue of the plaintiff's interest in August and Moran as of May, 1988, was actually litigated and necessarily determined in the prior litigation. It

does not logically follow from a determination of August's capital account, however, that an accounting of his *partnership interest*, of which the value of his capital account is but one component, was either fully litigated or necessarily determined in the prior action. In fact, our review of the record reveals that Bucci's testimony, relied on and cited to by the trial court, concerned the calculation of August's capital account and did not, as the trial court concluded, reflect that Bucci had "essentially" performed an accounting of August's partnership interest in August and Moran as of May, 1988. For the trial court to have concluded properly that the issue of an accounting had already been determined, the record would have had to reveal other evidence or testimony regarding any of the many other factors that are involved in an accounting of a partnership interest.[6] Our careful review of the record does not reveal such evidence or testimony.

We conclude that the issue of an accounting was neither actually litigated nor necessarily determined in the prior action. The trial court's determination of August's capital account in the prior proceeding addressed only some of the factors that an actual accounting of his partnership interest would involve. A complete adjustment of all firm accounts and partnership affairs was neither actually litigated nor necessarily determined in the prior action. Accordingly, collateral estoppel, or issue preclusion, does not apply here to bar August's claim requesting an accounting of his partnership interest in August and Moran as of May, 1988.[7]

---

[6] According to Bucchi's affidavit, a formal accounting consists of (1) cash balances, (2) fixed assets, (3) security deposits, (4) other assets, (5) notes payable, (6) accounts receivable, (7) accounts payable, (8) work in progress, (9) other accrued expenses and (10) capital accounts.

[7] Unlike claim preclusion, or res judicata, which bars the relitigation of claims that were either actually made or could have been made in the prior action, collateral estoppel, or issue preclusion, bars only those issues that were actually litigated in the prior action. *Connecticut National Bank* v. *Rytman*, 241 Conn. 24, 43–44, 694 A.2d 1246 (1997).

The judgment is reversed and the case is remanded with direction to deny the defendants' motion for summary judgment and for further proceedings.

In this opinion the other judges concurred.